McNAUGHTON, Appellant, vs. BORTH and another, Respondents.

*October 3—October 20, 1908.*

*Trespass: Cutting of timber: Mistake: Evidence: Damages.*

In an action for trespass by cutting timber it appeared from the evidence that defendants had positive knowledge of the existence and location of the witness trees to a quarter-post on the section line dividing their land from plaintiff's land on the east, and knew that such trees were at a distance west of a straight line between the section corners; that when about to cut the timber they ordered a survey by one who had no knowledge of such trees, and that they did not in any way help him

to find the quarter-post, although they knew that it determined the proper location of the line; that afterwards, knowing that he had not found the post but had probably passed to the east of it and that his survey was therefore unfinished and imperfect, and without giving him reasonable opportunity to find it,. they ordered him away to another survey. *Held*, that there was no support for a finding by the jury that the cutting of timber on plaintiff's land east of the true line was done by mistake; that such finding should have been changed by the court; and that plaintiff was entitled to recover under sec. 4269, Stats. (1898), the highest market value of the timber, in whatever place or condition, while in defendants' possession.

'APPEAL from a judgment of the circuit court for Langlade county: JOHN GOODLAND, Circuit Judge. *Reversed.*

The appeal is from a judgment rendered in an action of trespass by cutting timber.

For the appellant there was a brief by *Goodrick & Goodrick,* and oral argument by *A. B. Goodrick.* They cited, among other authorities, *Brown v. Bosworth,* 58 Wis. 379, 17 N. W. 241; *Underwood v. Paine L. Co.* 79 Wis. 592, 48 N. W. 673; *St. Croix L. & L. Co. v. Ritchie,* 78 Wis. 492, 47 N. W. 657; *Cook L., C. & P. Co. v. Oconto Co.* 134 Wis. 426, 114 N. W. 823; *Schweitzer v. Connor,* 57 Wis. 177, 14 N. W. 922; *Byington v. Merrill,* 112 Wis. 211, 88 N. W. 26; *Stafford v. Chippewa Valley E. R. Co.* 110 Wis. 331, 85 N. W. 1036.

*O. G. Erickson,* for the respondents.

TIMLIN, J.    Error is assigned upon the refusal of the trial court to instruct the jury that if the defendants or either of them knew, or by the exercise of reasonable care and diligence might have ascertained, the location of the government quarter-post between sections 20 and 21, it was their duty to have done so, and in instructing the jury that if they believed the testimony of the defendant *Borth* the defendants were not negligent, and in instructing the jury that the burden of proof with reference to the fourth question of the special verdict rested upon the plaintiff.    It was

not controverted that the plaintiff was the owner of the land from which the timber was cut by defendants, and the jury found the amount of timber cut and removed—the stumpage value to be $268.79, the manufactured value while in defendants' possession to be $523.94; and the fourth question and its answer is as follows: "Was said timber cut from said lands by mistake? Answer. Yes." The refusal of the foregoing instructions requested, and the giving of the foregoing instructions excepted to, were very questionable rulings. *Brown v. Bosworth,* 58 Wis. 379, 17 N. W. 241; *Arpin v. Burch,* 68 Wis. 619, 32 N. W. 681; *Underwood v. Paine L. Co.* 79 Wis. 592, 48 N. W. 673.

But we do not find it necessary to pass upon these questions, because the instructions refused and given relate to that part of the charge only applicable to the fourth question of the special verdict above quoted. With reference to this fourth question, the more comprehensive error is assigned that the court should have changed the affirmative answer of the jury to a negative, and upon the verdict so amended, and pursuant to sec. 4269, Stats. (1898), have rendered judgment for the larger value found by the jury. The only evidence to support the answer of the jury above quoted was given by Larzelere, the surveyor, and the defendant *Borth.* *Borth* testified that defendants employed Larzelere to run the north and south section line between sections 20 and 21, on the east side of which line lay the land of the plaintiff, and on the west side the land of the defendants. The defendant *Borth,* acting for both defendants, instructed Larzelere to get the field-notes and be sure and run the line right. Larzelere ran a straight line, commencing at the common section corner of sections 20, 21, 28, and 29 north, to the common section corner of sections 20, 21, 17, and 16. He did not find any quarter-post and did not finish his work. He was sent away by *Borth* to the town of Neva to do some surveying, notwithstanding he told *Borth* he had not corrected up that survey and that it ought to be corrected up

before he left it. *Borth* replied that they would not get over the line until Larzelere came back and corrected it up, and Larzelere did not come back and was not called back. Larzelere looked a good deal for the quarter-post, but did not find it at that time. The quarter-post was since found, and was twelve or fourteen rods west of the center of a straight line between the section corners above mentioned. He did not establish a quarter-post because he understood from *Borth* that the quarter-post was there and thought they would find it later on. When he came out correctly at the north end of his line he said there was no reason for correcting the line. He merely established the center between corner and corner and blazed the line he established and marked it out for the correct line, and he abandoned a further search for the quarter-post because the defendant sent him elsewhere to do some surveying. The defendant *Borth* testified in partial corroboration of this, but denied part, and added to the foregoing testimony as follows: Larzelere told him they could not find the quarter-post, and had looked for it some time, and *Borth* replied: "Well, if the quarter-post is not there, you've got the field-notes." Larzelere told *Borth* the line was all right to cut by. *Borth* had seen the witness trees of the quarter-post a couple of years before this, but whether it was on the line he could not say. It might have been on the line made by Larzelere. He (*Borth*) at one time ran up the line from the south to the quarter-post. There were three different lines, and he took the one farthest east from the south section corner and did not find any quarter-post there, but looked around and went west and found the two witness trees. He presumed they were there now. It was meant to be the quarter-post according to the field-notes. He reiterated that Larzelere told him the line as marked by Larzelere was all right and that he believed it. But he talked about this quarter-post with Larzelere before and after the survey, and told Larzelere about the time the latter ran the lines that he (*Borth*) had seen the

quarter-post, but did not offer to go and show Larzelere where the quarter-post was, nor did he send Larzelere back to look for it. This talk was had in the vicinity of the quarter-post. He could not tell whether he told Larzelere at that time to go over and survey some lands in Neva, but he did so at some time. When Larzelere told *Borth* he had not found the quarter-post, *Borth* said he had seen it. He knew where it was, but it was none of his business, because he was not there surveying, and the quarter-post might have been on the line that Larzelere ran; might have rotted away; but he (*Borth*) knew the line should be run to the quarter-post in order to be right, but did not know whether it was on Larzelere's line or not, and did not go to show Larzelere the location of the quarter-post because he (*Borth*) was too busy; did not try to find it because he was too busy with other work. *Borth* never asked Larzelere to come back and correct up the line because it was not necessary and because Larzelere had told him it was all right. Two or three years before, when *Borth* saw this quarter-post or the witness trees to it, he saw the old lines run by the government, he supposed. There were two different lines, and he took the one farthest east, paced the line from the south section corner halfway across the section, then he went west, and found the witness trees for the quarter-post.

Taking this evidence in its entirety, there is nothing in it to support the verdict of the jury that the cutting was done by mistake, unless it can be considered a mistake where the defendants have positive knowledge of the existence and location of the witness trees to the quarter-post, and that they are at a distance west of a straight line between the section corners and at a distance west of the most easterly line of two lines, and then three years after, when about to cut and remove timber, order a survey by one who has no knowledge of the existence or location of these witness trees. They then fail to point out to him or help him to find the monument, all the time knowing that it determines the loca-

tion of the line and that the surveyor has not found it but has probably passed to the east of it.   They knew that Larzelere's line was unfinished and imperfect because he did not find the quarter-post, yet ordered him away to another survey without helping him to find this quarter-post and without giving him, under the circumstances, reasonable op-. portunity so to do.   If this were sufficient it would be very easy to make out a case of mistake under this statute.   We think there was no evidence to support the finding of the jury that the cutting was done by mistake.   The trial court should have changed the answer to the fourth question from "Yes" to "No," and awarded judgment in favor of the plaintiff for the larger damages found by the verdict and the costs of the action.

*By the Court.*—Judgment reversed, and the cause remanded with directions to render judgment for the plaintiff for the damages found by the jury in their answer to the third question of the special verdict.